STATE OF INDIANA *v.* JULES T. GRADISON & RITA J. GRADISON; AUDITOR OF ALLEN COUNTY; TREASURER OF ALLEN COUNTY

[No. 3-176A5. Filed October 31, 1978.]

*Theodore L. Sendak*, Attorney General of Indiana, *Arthur Thaddeus Perry*, Deputy Attorney General, for appellant.

*James W. Treacy, Treacy, Carter & Cohen*, of Indianapolis, *David B. Keller, Parker, Hoover, Keller & Waterman*, of Fort Wayne, for appellee Gradison. *Thomas E. Ruzzo*, of Fort Wayne, for appellees Auditor and Treasurer of Allen County.

STATON, J.—On March 16, 1973, the State of Indiana filed a Complaint for Appropriation of Real Estate in the Allen Circuit Court. The property taken was .553 acres of land off a parcel of land containing approximately five acres owned by Jules T. Gradison. The purpose of the take was for a right of way on U.S. 30 near the intersection of Highways 30 and 33 and Interstate 69. The highway project created a limited access frontage to this land for that portion of the tract fronting on U.S. 30. The state highway plans called for a frontage road leading into the property. The access to the frontage road was on California Road past the intersection of U.S. 30 and California Road and leading back into the property in question.

A visual observation of the property at that time revealed a gate opening in the limited access fence for traffic on Hatfield Road which led onto U.S. 30. The highway engineering plans called for a closed gate at this opening to be opened only for state highway vehicles and so effectively closed off the Hatfield Road access to the property.

The land was zoned under a B-4 zoning classification under the Allen County Plan Commission at the time of the take. This zoning called for road side businesses. Expert opinion was offered at trial showing that the highest and best use of this land at the time of the take was for

road side businesses with restaurants and filling stations probably representing the highest type of economic use. The court-appointed appraisers fixed a value of $40,380.30 for the land taken by the state and the residual damage. Gradison contended that the great difficulty imposed in access to the land by the limited access appropriation created a heavy burden on future use of the land and so had caused considerable damage to the residue.

Following the presentation of evidence and arguments of counsel, the trial court entered judgment upon the jury's verdict in favor of Gradison for damages in the sum of $140,000 plus interest in the amount of $12,693.00 and costs.

The State bases its appeal on the following questions:

(1)  Did the trial court err in refusing the State's tendered Instruction No. 4?

(2)  Did the trial court err in refusing the State's tendered Instruction No. 5?

(3)  Did the trial court err in refusing the State's tendered Instruction No. 9?

We conclude that the trial court did not err in refusing to instruct the jury as to the three instructions submitted by the State and we affirm its judgment.

## I.

### Instructions 4 and 5

It is clear from the record that the purpose of the taking was to construct a limited access highway along Goshen Road, U.S. Rts. 30 and 33. The residue of Gradison's land would have ingress and egress onto Hatfield Road, which continues for 1400 feet easterly, at which point there is a crossover providing a route to and from the By-Pass and I-69. Thus traffic on the By-Pass and I-69 could enter the property. Gradison's access to Goshen Road was totally cut off.

With so much testimony in the record concerning the effect of the take on access to the residue, the State felt a need for the court to instruct the jury as to what role considerations of access should play in their deliberations, and it submitted two instructions on the matter.

Plaintiff's Instructions Nos. 4 and 5 were as follows:

"The Court instructs you: If, because of, the regulation of traffic and the division of the highway, some circuity of travel is required by the public using this highway, such regulation cannot be made the basis for a claim of damages against the State of Indiana, and such issue has been withdrawn from your consideration. *Plaintiff's Tendered Instruction No. 4.*

"The Court instructs you that the Indiana State Highway Department has the authority under the law to limit and restrict abutting property owner's right of access so long as such owner has reasonable and convenient access to the highway; and, if you find that the owners in this case have reasonable and convenient access to the highway after the improvement, you shall not allow any sums in your determination or award for restricting their access to the highway. *Plaintiff's Tendered Instruction No. 5.*"

Both instructions were refused by the trial court.

The court in this case did give Plaintiff's Tendered Instruction 7 which reads as follows:

"Loss of access is compensable and may be considered by you in determining the damages to be awarded the defendants only when such loss of access is special and peculiar to this property, and only when no other reasonable means of access is available to the property."

This instruction is identical with one which was approved of in *Beck v. State* (1971), 256 Ind. 318, 268 N.E.2d 746, except that in the *Beck* case "only" was inserted before "compensable." The court ruled as follows:

"The instruction permitted the jury to determine from the evidence whether the access remaining from Highway 460 to the property in question was a reasonable means of access under the circumstances and whether or not the property owners had suffered a compensable damage as a result of the cutting off of a portion of the road frontage by the construction of a limited access fence. . . ." *Beck, supra,* 256 Ind. at 323, 268 N.E.2d at 749.

The State's Instruction 7 was appropriately given by the trial court. There was evidence that the access connected with the highest and best use of the land had been taken. *Indiana v. Peterson* (1978), 269 Ind. 340, 381 N.E.2d 83. Furthermore, it is not improper for the trial court to refuse requested instructions which are suffi-

ciently covered by other instructions given. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. Here, the instructions had similar meaning. *Bonek v. Plain* (1972), 153 Ind.App. 516, 288 N.E.2d 185.

The trial court did not err when it refused State's Tendered Instructions 4 and 5.

## II.

### Instruction 9

State's Tendered Instruction No. 9 is as follows:

"You are hereby instructed that the plaintiff, The State of Indiana, filed its complaint to condemn a portion of the following described real estate in Allen County, Indiana:

Part of the Southwest Quarter of the Southeast Quarter of Section 21, Township 31 North, Range 12 East, more particularly described as follows, to-wit:

Beginning at the intersection of the west line of said Southwest quarter of said Southeast quarter of said Section and the centerline of U.S. Routes Numbered 30 and 33 (Goshen Road) as now established; thence north on the west line of said Southwest quarter of said Southeast quarter of said Section, a distance of 259.5 feet; thence east a distance of 410.92 feet; thence south a distance of 253 feet; thence West making an interior angle of 90 degrees, a distance of 192 feet; thence to the left with a deflection angle of 74 degrees 37 minutes, a distance of 213.5 feet to the center line of said U.S. Routes Numbered 30 and 33; thence northwesterly along the center line of said highway a distance of 262.5 feet to the place of beginning; subject to all public highways.

Subject to all taxes, building and occupancy restrictions, building line and zoning regulations, public highways and easements of record.

The amount appropriated for highway purposes is .553 acres as is shown in the cross hatch marked area in defendants' Exhibit 'A'. You are to assess damages for the taking of a temporary easement as is shown on said Exhibit 'A' and for damages to the residue, if any, of the above described real estate.

You are not to assess any damages to any other real estate

owned or claimed by the defendants including the real estate described in defendants' Exhibit 'C'."

This instruction was refused by the trial court.

The State's tendered instruction attempts to limit the residual damages to the landowner to the smaller tract of land and proposed to instruct the jury to consider only residual damages for Exhibit "A" and excluding damages to Defendant's Exhibit "C". In order to attempt to follow the State's reasoning these exhibits should be identified. Exhibit "A" was introduced in the trial as being the same Exhibit "A" that was attached to the complaint and so the exhibit references are one and the same. Exhibit "A" of the complaint was a plat showing the land to be appropriated and the entire tract of land owned by Jules Gradison which encompassed a greater area than that described in the legal description. Exhibit "A" was introduced by Gradison without objection. Exhibit "B" was then introduced which was a blown-up engineering drawing of Exhibit "A" for demonstration purposes for the jury. This was also introduced by Gradison without objection. Exhibit "C" was a deed conveying the northern parcel to the landowner in 1960. There was then a complete legal description and a record of both parcels of land. Exhibit "C" was also introduced without objection from the State.

The State notes that the two tracts described in Gradison's Exhibit "C" are mentioned neither in the complaint nor in his objections to the complaint. It therefore asserts that the tracts are outside the scope of the pleadings. The State goes on to claim that since Gradison omitted to mention this land in his objections, it cannot be part of the residue under the holding of *Pry v. Pry* (1947), 225 Ind. 458, 75 N.E.2d 909. *Pry* states that omitted facts are considered adverse to the pleader under the presumption that a party will set forth all the facts favorable to his cause.

When the exhibits showing both parcels of land were introduced into evidence without objection, the theory of the trial inevitably became concerned with the entire tract of land which was made up of the two legal descriptions. Any conflict in the legal description and drawing and the complaint was cured by the evidence. Indiana Rule of Procedure, Trial Rule 15(B), states as follows:

*"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.* Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. . . ." (Emphasis added.)

Where the trial court might have properly amended the pleadings at the trial this Court has ruled that it will consider the pleadings as amended to conform to the evidence. *General Outdoor Adv. Co. v. LaSalle Realty Corp.* (1966), 141 Ind.App. 247, 218 N.E.2d 141.

Thus, the State was not entitled as a matter of law to have its Tendered Instruction read to the jury. By doing so, the trial court would have improperly kept from the contemplation of the jury evidence of the two tracts of land which had been properly entered into the record.

The essence of the State's argument is that the jury should have been instructed not to consider residual damages to the second or northern parcel of the landowner's property. However, it is the affirmative duty of the State to show that the error complained of prejudiced its cause. *Turner v. State* (1972), 259 Ind. 344, 287 N.E.2d 339. Nothing in the State's brief is offered to indicate that the jury considered more than the .553 acres of land appropriated by the State in its determination of damages. Neither does the evidence in the absence of the State's limiting instruction invariably dictate that the jury consider more than the appropriated area in its deliberations.

In the absence of substantive indicia of prejudice to the State by the denial of its Tendered Instruction, we perceive no error in the trial court's refusal of it.

We affirm.

Lowdermilk, J., (by designation), Concurs;

Garrard, P.J., Concurs in Result.

NOTE—Reported at 381 N.E.2d 1259.