STATE of Indiana, Plaintiff-Appellant,

v.

RAYMOND E. HEINOLD FAMILY TRUST, Raymond E. Heinold, Trustee, Marie E. Heinold, Trustee; Robert Francis; Pat Francis; First Merchants National Bank; and Treasurer of LaPorte County, Defendants-Appellees.

No. 3–1084A271.

Court of Appeals of Indiana,
Third District.

Oct. 23, 1985.

Linley E. Pearson, Atty. Gen., Jeffrey L. Simnick, Deputy Atty. Gen., Indianapolis, for plaintiff-appellant.

Robert A. Welsh, Harris, Welsh & Lukmann, Chesterton, for defendants-appellees.

GARRARD, Judge.

The State of Indiana initiated this condemnation action to limit the access to and obtain a temporary easement over a parcel of land (trust property) in LaPorte County. The Raymond E. Heinold Family Trust and others were named to represent their re-

spective interests in the trust property.[1] The trust property was affected by the State's plan to make U.S. Route 30 a limited access highway facility over a four mile stretch in LaPorte County. Prior to this plan the trust property enjoyed unfettered access to U.S. 30 along its southernmost boundary.

The southern end of the trust property abutting U.S. 30 is used for commercial purposes upon which a service station and a restaurant, just to the east of the service station, operate. On the northern half of the trust property two residential buildings are located. The State's plan called for the installation of curbing in front of the trust property leaving two thirty (30) foot driveways for access to U.S. 30.[2] The driveways were positioned one just to the east of the restaurant and one between the restaurant and the service station.

The testimony at trial indicated that while the residential portion of the property would be unaffected by the limited access to U.S. 30, the commercial portion (service station and restaurant) would be adversely affected by the State's project. A real estate appraiser (Chitwood) testifying for the trust put the overall value of the trust property at $174,350.00 before the limitation of access.[3] Chitwood also indicated that the highest and best use for that portion of the property abutting U.S. 30 was commercial and that the service station and restaurant fulfilled that use. Chitwood based this determination in part on the complete access the property enjoyed to U.S. 30 prior to the curbing installation. Chitwood then concluded that the highest and best use for the commercial portion of the trust property after the limitation of access would be for the service station only. Chitwood also considered the access

to the commercial property after the limitation to be unreasonable because the turning radiuses of vehicles over 18 feet in length prohibited use of the south side of the gas pumps and made use of the north side of the pumps very difficult from the driveway between the service station and the restaurant and because the curbs would be so close to the front of the restaurant as to make parking there a serious problem.

The trial court refused to permit Chitwood to testify as to the after taking value of the property for the purpose of ascertaining damages when the State objected to the appraisal method he used to determine after value. The trial court also prohibited another trust witness from testifying as to damages or after value because of prior communication with a previous witness concerning the value of the property. After the trust rested without adducing any direct evidence as to the amount of damages sustained, if any, the State moved for judgment on the evidence, which was denied. The State was also unable to adduce any direct evidence as to the amount of damages or the value of the trust property. Despite the lack of direct evidence as to any amount of damages the jury returned a verdict in favor of the trust in the amount of $24,923.00.

On this appeal from the jury's award the State has presented two issues for review:

(1) Whether there was sufficient evidence on the issue of damages to support the jury's award; and

(2) Whether the trial court erred in denying the State's second request for judgment on the evidence presented in the State's motion to correct error.

---

1. The "others" included Marie and Raymond E. Heinold as trustees, Robert and Pat Francis as lessees, First Merchants National Bank as mortgagor, and the Auditor and Treasurer of LaPorte County as possible tax lienholders. Only the trust and the trustees filed responsive pleadings and appeared in this action and for convenience the appellees will be referred to as the "trust."

2. The State sought the temporary easement for the purpose of installing a driveway onto the trust property.

3. Individual values were attributed as follows:

| Service station | $14,700 |
| Restaurant | $41,100 |
| Residences | $35,000 |
| Improvements | $24,400 |
| Land | $59,150 |

It is generally held that upon review an appellate court will not disturb an award of damages in an eminent domain proceeding where the award is within the bounds of the probative evidence adduced at trial. *Beyer v. State* (1972), 258 Ind. 227, 280 N.E.2d 604; *City of Indianapolis v. Schmid et al.* (1968), 251 Ind. 147, 240 N.E.2d 66; *City of Elkhart v. No-Bi Corp.* (1981), Ind.App., 428 N.E.2d 43; *Indiana & Michigan Elec. Co. v. Hurm* (1981), Ind. App., 422 N.E.2d 371; *Bd. of Comm'rs. of Vanderburgh Cty. v. Joeckel* (1980), Ind. App., 407 N.E.2d 274. In the *City of Elkhart* case the court indicated that:

> "On review of such an award, the appellate court will neither reweigh the evidence nor judge the credibility of the witnesses. The evidence will be looked at in a light most favorable to the judgment. *City of Indpls. v. Heeter et al.* (1976), 171 Ind.App. 119, 355 N.E.2d 429."

428 N.E.2d at 45.

▇▇▇ While the foregoing rules tend to give great deference to damage awards in eminent domain cases because of the factfinder's ability to hear the evidence and judge the credibility of witnesses first hand, there is an important limitation placed upon juries in these cases. The Indiana Supreme Court articulated this limitation in the case of *Gradison v. State* (1973), 260 Ind. 688, 300 N.E.2d 67, 74–75 when it determined that:

> "In eminent domain cases, *the jury may not base its verdict upon their independent knowledge of values.* The reason for such rule was clearly set forth in *Washburn v. Milwaukee & Lake Winnebago R. Co.*, 59 Wis. 364, 18 N.W. 328, 331, 20 Am. & Eng.R.Cas. 225:
>
> \* \* \* \* \* \*
>
> [I]f the testimony of value and damages is conflicting, the jury may resort to their own general knowledge of the elements which affect the assessment, in order to determine the relative weight of conflicting testimony, but *their assessment must be supported by testimony, or it cannot stand.*" (emphasis added)

Hence, it is the State's contention that there is no testimony in this case which will support the jury's assessment of \$24,923.00. Based upon our review of the record below we are required to agree.

The only testimony from which a specific amount of damages could be discerned is that of the trust's appraiser, Kenneth Chitwood. He testified that it was his opinion that 45 percent of the service station's business would be lost as a result of the difficult turning radiuses attributable to larger vehicles. He further testified that the highest and best use after the taking would probably be that of a service station only. The trust contends that from this latter testimony the jury could infer a 100 percent loss of use of the restaurant to the commercial portion of the trust property. In other words, the trust contends that based upon Chitwood's valuation of the restaurant at \$41,100.00 before the access restriction and his conclusion that the highest and best use of the trust property after the taking did not include the restaurant, the jury could have awarded up to \$41,100.00. Since the actual award was under that figure, it was within the scope of the probative evidence and should be affirmed. This conclusion assumed from Chitwood's testimony that because in Chitwood's opinion the highest and best use of the property no longer included the restaurant, the value of the property would decrease by the value the restaurant had contributed before the access limitation.

▇▇▇ The Indiana Supreme Court has addressed the issues of entitlement to and assessment of a landowner's damages when the State has affected the landowner's access to his property in *State v. Peterson* (1978), 269 Ind. 340, 381 N.E.2d 83. In *Peterson* the Supreme Court concluded:

> "It is true that whether the landowner is left with reasonable access to his realty bears greatly upon whether he had indeed suffered special injury. However, it must be borne in mind that his damage entitlement is to be based upon the high-

est and best use of the property at the time of the taking. Thus, if the highest and best use before the taking was for one purpose, and because of the access available after the taking, the property was no longer suitable for that use, but was still suitable for a less valuable use, *the owner would be entitled to the damages reflecting the diminished value.*

\* \* \* \* \* \*

*The highest and best use to which land could reasonably be devoted immediately before the 'take' is the criteria for determining its value at that time.* If the access to which the owner was then lawfully entitled was necessary in order to so use the land, and that access is denied by the 'take', the owner is entitled to be compensated, regardless of the availability of other access which may be 'reasonable' for other purposes but does not fulfill the need critical to the coveted use." (emphasis added)

381 N.E.2d at 85. Hence, it was entirely proper for Chitwood to determine the value of the trust property before the "take" by applying the highest and best use criterion. However, it does not follow that merely because the land was no longer suited for the restaurant, in Chitwood's opinion, that the value of the land would decrease by the value that the restaurant had added to it. The highest and best use of the property was for commercial purposes both before and after the State's plan to install curbing. Arguably the testimony could support the inference that the highest and best use permitted two commercial establishments before the taking and only one after, but the testimony does not support the conclusion that the value of the property will be diminished by the value the restaurant had added to it.

■ Recently the court in *Taylor-Chalmers, Inc. v. Bd. of Com'rs.* (1985), Ind. App., 474 N.E.2d 531 (Garrard, J. concurring) discussed the "highest and best use" terminology, determining:

" 'Highest and best use' is a familiar benchmark in eminent domain law, and is most commonly used to recognize that an owner may not at the time of an appropriation be using his property for the most valuable use to which it is then naturally adapted. *See State v. Hamer* (1936), 211 Ind. 570, 199 N.E. 589. While the owner is entitled to compensation for property taken on the basis of its 'highest and best use,' it should be borne in mind that this refers to a conclusion based upon opinion, not a fact in the objective sense. Thus in fixing value the law only required that the factfinder be permitted to *consider* uses to which the land may be adapted but for which it has not actually been used. *Indiana & Michigan Electric Co. v. Hurm* (1981), Ind.App., 422 N.E.2d 371. What is actually at issue is simply the fair market value of the land or interest."

474 N.E.2d at 533 (n. 2). The thrust of this discussion is that highest and best use opinions can be *considered* in fixing value. In the present case Chitwood's opinion as to the highest and best use after the taking was the only piece of evidence from which the jury could determine the after taking value of the property. In access cases the jury's task is to discern the damages due to a landowner that reflect the diminished value of the property after the taking. *State v. Peterson, supra.* To accomplish that task there must be probative evidence before them reflecting the fair market value of the property before the taking and after the taking. There was no probative evidence regarding the after taking value of the trust property. All the jury had was Chitwood's after taking highest and best use determination which they could take into consideration when arriving at value.

In his treatise on eminent domain, Nichols states that:

"It is well settled that a witness having greater opportunity for knowledge of the value of real estate taken by eminent domain than the members of the jury is not limited to a statement of the facts which give it value, for a jury could hardly make an intelligent valuation from a description of the land and an enumeration of its advantages without a

definite figure as a guide, and a duly qualified witness may consequently state what, in his opinion, the land is worth in the market."

5 Nichols, *Eminent Domain*, Section 23.3 (Revised 3d ed. 1984). The only valid inference favorable to the trust that the jury could draw from Chitwood's testimony concerning damages is that the value of the property probably decreased, but without any evidence of after value the jury was unable to properly determine the extent of the decrease.

As to the State's second issue regarding the trial court's decision not to enter a judgment on the evidence, the foregoing inference alluded to, while insufficient for the jury to base its award upon, is sufficient to preclude a judgment on the evidence. Our standard of review concerning rulings on motions for judgment on the evidence was aptly stated in *Perry v. Leo P. Knoerzer Corp.* (1984), Ind.App., 472 N.E.2d 223. Judge Conover wrote:

"In reviewing a trial court's ruling on a motion for judgment on the evidence, we consider only the evidence and reasonable inferences most favorable to the non-moving party. *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205, 206; *Johns v. New York Blower Co.* (1982), Ind. App., 442 N.E.2d 382, 384; *Large v. Gregory* (1981), Ind.App., 417 N.E.2d 1160, 1163. A judgment on the evidence in favor of the defendant is proper only when there is an absence of evidence or reasonable inferences in favor of the plaintiff upon an issue in question. The evidence must support without conflict only one inference which is in favor of the defendant. *Jones*, 468 N.E.2d at 207; *Palace Bar, Inc. v. Fearnot* (1978), 269 Ind. 405, 381 N.E.2d 858, 861. If there is any probative evidence or reasonable inferences to be drawn from the evidence sufficient to support the claim, or if there is evidence allowing reasonable people to differ as to the result, judgment on the evidence is improper. *Jones*, 468 N.E.2d at 207."

472 N.E.2d at 225. *See also Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985.

■ The right of a property owner to be compensated for a loss of access is firmly established under IC 8–11–1–5. *State v. Hastings* (1965), 246 Ind. 475, 206 N.E.2d 874; *State v. Peterson, supra.* While the loss of access must be special and peculiar to the property in question to be compensable, *State v. Peterson, supra,* the loss does not have to be total so long as there is a substantial and material impairment to the right of access. *State v. Diamond Lanes, Inc.* (1968), 251 Ind. 520, 242 N.E.2d 632. Here there was substantial evidence that the trust suffered a compensable loss of access through a taking by the State. Judgment on the evidence as to the State's liability was therefore inappropriate, and upon a determination of liability the trust would at least have been entitled to nominal damages.

The issue thus becomes whether the damages awarded were excessive. Upon such claims both Trial Rule 59(J)(5) and Appellate Rule 15(N)(5) invest the court with sound discretion to enter judgment on the evidence for the amount of the proper damages, grant a new trial, or grant a new trial subject to additur or remittitur.

In light of the foregoing the trial court is reversed and the case remanded for a new trial pursuant to Indiana Rules of Procedure, Appellate Rule 15(N)(5) on the issue of damages.

Reversed and remanded.

STATON, P.J., and HOFFMAN, J., concur.